UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY W., | Case No.: 24-cv-00850-JLB |
| Plaintiff, | |
| v. | **ORDER RE PLAINTIFF'S MERITS BRIEF** |
| FRANK BISIGNANO,<br>Acting Commissioner of Social Security, | **(ECF Nos. 12, 17)** |
| Defendant.[1] | |

On May 13, 2024, plaintiff Stacy W. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. (ECF No. 1.)

Now pending before the Court and ready for decision is Plaintiff's merits brief. (ECF Nos. 12, 17.) For the reasons set forth herein, Plaintiff's merits brief is **DENIED**, and the decision of the Commissioner is affirmed.

///

---

[1] Frank Bisignano, the Acting Commissioner of Social Security, is substituted as defendant for Martin O'Malley. *See* Fed. R. Civ. P. 25(d).

1

## I.    PROCEDURAL BACKGROUND

2       On September 16, 2021, Plaintiff filed an application for a period of disability and

3  disability insurance benefits under Title II of the Social Security Act, alleging disability

4  beginning August 3, 2021.  (Certified Administrative Record ("AR") at 186–92.)  After

5  her application was denied initially and upon reconsideration (AR 110–15, 117–22),

6  Plaintiff requested an administrative hearing before an administrative law judge ("ALJ")

7  (AR 123–24).  An administrative hearing was held on March 28, 2023.  (AR 30–66.)

8  Plaintiff appeared at the hearing with counsel, and testimony was taken from her, as well

9  as from a vocational expert ("VE").  (AR 30–66.)

10      As reflected in his September 19, 2023 hearing decision, the ALJ found that Plaintiff

11  had not been under a disability, as defined in the Social Security Act, from August 3, 2021

12  through the date of decision.  (AR 14–29.)  The ALJ's decision became the final decision

13  of the Commissioner on March 8, 2024, when the Appeals Council denied Plaintiff's

14  request for review.  (AR 1–6.)  This timely civil action followed.

15  ## II.    SUMMARY OF THE ALJ'S FINDINGS

16      In rendering his decision, the ALJ followed the Commissioner's five-step sequential

17  evaluation process.  *See* 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff

18  had not engaged in substantial gainful activity since August 3, 2021, the alleged onset date.

19  (AR 20.)

20      At step two, the ALJ found that Plaintiff had the following severe impairments:

21  degenerative disc disease of the lumbar spine, with stenosis, s/p decompression; post-

22  laminectomy syndrome; and chronic pain syndrome.  (AR 20.)

23      At step three, the ALJ found that Plaintiff did not have an impairment or combination

24  of impairments that met or medically equaled the severity of one of the impairments listed

25  in the Commissioner's Listing of Impairments.  (AR 21.)

26  ///

27  ///

28  ///

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform a range of sedentary work as defined in 20 CFR 404.1567(a)" with the following limitations:

> [The] claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; and can stand and/or walk for two hours, and sit for six hours, in an eight hour workday.  The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb; and must avoid concentrated exposure to extreme cold, to vibration and to hazards, such as dangerous machinery and unprotected heights.

(AR 22.)

For purposes of his step four determination, the ALJ determined that Plaintiff is capable of performing past relevant work as an order clerk, data entry clerk, and cashier II. (AR 24.)  Accordingly, the ALJ found that Plaintiff was not disabled under the law from August 3, 2021, through the date of decision.  (AR 24–25.)

## III.    PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's amended merits brief, the disputed issues that Plaintiff is raising as grounds for reversal and remand are as follows:

1.    Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony.  (ECF No. 17 at 3.)

2.    Whether the ALJ's RFC determination is supported by substantial evidence in the record.  (*Id.*)

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).  In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence.  (*Id.*)

## V.    DISCUSSION

### A.    The ALJ Properly Rejected Plaintiff's Subjective Symptom Testimony.

#### 1.    Parties' Arguments

Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective symptom testimony by failing to give clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony that she was not capable of sedentary work.  (ECF No. 17 at 13–17.)  Plaintiff further argues that the ALJ erred by mischaracterizing Plaintiff's testimony and cherry-picking the evidence to support his conclusions.  (*Id.* at 15–16.)  In response, the Commissioner argues that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptom testimony.  (ECF No. 15 at 6.)  Specifically, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence and her improvements though treatment.  (*Id.* at 7–10.)

#### 2.    Plaintiff's Testimony

Plaintiff appeared and testified at the March 28, 2023, hearing with counsel.  (AR 31–66.)  Plaintiff discussed several jobs she held from 2008 to 2020.  In 2008, Plaintiff was employed as a veterinary technician at Covington Creek Veterinary Clinic and her job duties included taking temperatures, charting, lifting the animals, and assisting in surgeries.  (AR 42–43.)  Plaintiff was terminated for a medical mistake and dealt with stress and guilt following the incident.  (AR 43.)  Plaintiff remained unemployed for the rest of 2008, explaining that she was distraught.  (AR 43.)  In 2009, Plaintiff worked at Home Depot,

where she worked as a seasonal cashier and lifted "maybe 40 pounds." (AR 44.) Plaintiff was unsure on the length of her position but possibly one to three months. (AR 45.)

Plaintiff's next job was with IHSS, an in-home supportive services company, where she cleaned, grocery shopped, transported her client to some appointments, handled laundry, and assisted her client with walking. (AR 45–46.) Plaintiff then spent several years working as a parts driver for Fast Fuller, where her job duties included picking up and delivering parts for vehicles, as well as restocking the warehouse. (AR 46.) The heaviest weight she was expected to lift to fulfill these job duties was upwards of 60 or 75 pounds, lifting "alternators, rotors, brake pads, and calibers." (AR 46–47.)

In 2015, Plaintiff worked at collision repair shop and ordered and delivered parts in the shop, ultimately "lifting upwards of 40, 50, 60 pounds." (AR 48.) When the mechanic needed a part, she loaded it onto a cart and then brought it to the mechanic's stall. (AR 48.) More recently, Plaintiff was employed by CalCon Mortgage as a data entry or mortgager clerk. (AR 48–49.) Her primary job duty was helping document mortgage loan underwriting. (AR 49.)

Next, Plaintiff worked at Morson International as a driver, where her job duties included picking up specimens, including blood work and tissue samples, from hospitals or doctor's offices and taking them to labs for processing as well as picking up supplies for hospitals. (AR 49.) The heaviest weight she picked up was about 30 to 40 pounds. (AR 49.) Plaintiff did not stay at that job long because "it was just not working for [her] as far as driving and it was in [her] vehicle." (AR 49–50.)

Plaintiff then worked full-time as a custodian for a school district where her job duties consisted of bathroom cleanup, vacuuming, wiping down and moving tables, and summer cleaning, which included emptying out entire classrooms and scrubbing them down. (AR 50.) The maximum amount of weight she lifted in this job was about 50 pounds. (AR 50.) Plaintiff's back began to bother her at this job, which made it difficult for her to work full-time. (AR 50.) Plaintiff stated she stopped working for the school district because her back "gave out," which she described as "twinges" in her back and

neck that barely allowed mobility.  (AR 51.)  Plaintiff subsequently had neck surgery and lower back surgery.  (AR 51.)

At the time of the hearing, Plaintiff stated that she could not work because she was unable to stand or walk for long periods of time because her hips and back would hurt tremendously and her legs would start spasming within thirty minutes to an hour.  (AR 51.)  Plaintiff also stated that she struggles to sit for long periods, and she must move around a bit to loosen up and get off a pressure point in her hip or back.  (AR 51–52.)

Plaintiff testified that her typical day includes letting out the dogs, making coffee, sitting on the porch, making breakfast, and watching television.  (AR 52.)  She tries not to stay in one spot to avoid her body stiffening up.  (AR 52.)  While watching television, Plaintiff stated she would be unable to sit for a whole hour, so she would pause the program, get up, and walk around the house in order to be able to resume the program.  (AR 53.)  Plaintiff further testified that "[s]itting for long lengths of time, bending over, stooping[, and] lifting anything from the ground up" worsens her pain.  (AR 54–55.)  Plaintiff testified that her husband does most of the dog walking, especially since the Boston Terrier is too strong for her to hold.  (AR 53.)  Plaintiff's husband also does most of the household work, including laundry and grocery shopping.  (AR 54.)

### 3.  Legal Standard

In deciding whether to accept a claimant's subjective symptom testimony, the ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the ALJ must assess "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter*, 504 F.3d at 1036).  "This is not an easy requirement to meet: 'The clear and

convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony").

The ALJ is responsible for "determin[ing] credibility, resolv[ing] conflicts in the testimony, and resolv[ing] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) (directing that the Commissioner's "findings . . . as to any fact, if supported by substantial evidence, shall be conclusive"). In assessing a claimant's credibility, the ALJ may consider, *inter alia*, (1) inconsistencies in the claimant's testimony or between her testimony and her conduct; (2) the claimant's daily living activities; (3) the claimant's work record; and (4) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

If an ALJ's credibility finding is reasonable and supported by substantial evidence in the record, it is not the court's role to engage in second-guessing. *See Thomas*, 278 F.3d at 959; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). However, "[i]f the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] [its]

conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1103). Because reviewing courts "cannot engage in such substitution or speculation, such error will usually not be harmless." *Id.* But the ALJ's reliance on other possibly erroneous credibility findings is harmless if the ALJ's conclusion on credibility is supported by other substantial evidence. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162–63 (9th Cir. 2008).

### 4.   Analysis

The ALJ summarized Plaintiff's testimony as follows:

> The claimant testified that she has a history of surgical intervention to her lumbar and cervical spine in her remote past. She testified that she experiences pain in her back that radiates down to her hips and legs. She also testified that she has to move around to help alleviate the pressure in her back or hips and is not able to stand, walk or sit for extended periods of time. There was also testimony that her pain symptoms are exacerbated from stooping and that she tries to avoid any strenuous activities. She also reported that she gets fatigued very quickly and can lift a gallon of milk but not very often.

(AR 22 (citing Hearing Testimony, Exs. 1E, 3E).)

After consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 22.) However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 22.) Specifically, the ALJ rejected Plaintiff's testimony regarding the severity of her symptoms because the (1) the objective medical evidence was not entirely consistent with the asserted extent of pain, and (2) there was evidence of continued improvement with Plaintiff's pain management treatment. (AR 23.)

As there is no evidence of malingering in the record, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her symptoms. *See Treichler*, 775 F.3d at 1102. The Court will address each reason below.

a.    *Inconsistent with objective evidence*

First, the ALJ discounted Plaintiff's testimony regarding the severity of her symptoms on the basis that her statements were inconsistent with the objective evidence as a whole.  (AR 23.)   Contradiction with the medical record is a permissible basis for rejecting a claimant's subjective symptom testimony.  *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *Carmickle*, 533 F.3d at 1161.  However, "an ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'"  *Id.* at 494–95 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

In support of this reason, the ALJ observed that, although Plaintiff's "longitudinal examination findings were varied with signs of reduced spinal range of motion and loss of sensation in her left leg," they also showed "signs of full range of motion of her upper and lower extremities and only mild deficits in her left hip flexion motor strength."  (AR 23.) Plaintiff argues that the ALJ cherry-picked the clinical examination findings, but the ALJ acknowledged that Plaintiff "demonstrated signs of spinal tenderness, reduced spinal range of motion, positive Faber testing bilaterally, left knee tenderness and decreased sensation over the lateral aspect of the left leg."  (AR 23 (citing Ex. 5F/7, 54, 13F/20, 24, 28, 32, 41, 46, 54, 62, 66, 75, 79, 83–84).)   However, the ALJ further observed that Plaintiff also "demonstrated signs of full range of motion of her upper and lower extremities, no obvious deformities or joint swelling, full grip strength, full motor strength in her upper and lower extremities except for mild deficits in her left hip flexion (4/5), intact deep tendon reflexes and negative straight leg raise, Tinel, and Phalen testing."  (AR 23 (citing Ex. 5F/7, 54, 13F/20, 24, 28, 32, 41, 46, 54, 62, 66, 75, 79, 83–84).)  Although Plaintiff argues the Court should weigh the evidence differently, the Court finds the ALJ's reasoning to be rational and supported by substantial evidence in the record.  *See Reddick*, 157 F.3d at 722 ("[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony,

and for resolving ambiguities."); *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ further relied on Plaintiff's updated diagnostic imaging of the spine, which he noted showed "no significant spinal stenosis or nerve root impingement." (AR 23–24 (citing Ex. 4F/67, 68).) As the ALJ noted, Plaintiff's May 2020 x-rays of her cervical spine "were unremarkable with evidence of a cervical spine fusion with mild degenerative disc space narrowing at C3–4 that was stable." (AR 23 (citing 4F/67).) A corresponding x-ray of Plaintiff's lumbar spine showed "multilevel degenerative disc disease with narrowing of the lower lumbar spine at L4–5 and L5–S1 with associated facet osteoarthritis present at L5–S1 but normal alignment." (AR 23 (citing Ex. 4F/68).) The lumbar spine x-ray concluded with the following impression: "multilevel degenerative disc disease with no acute findings." (AR 494.)

Plaintiff argues that the ALJ mischaracterized Plaintiff's May 2020 x-rays as "updated diagnostic imaging." (ECF No. 17 at 16.) However, Plaintiff does not point to any more recent x-rays or diagnostic imaging in the record on which the ALJ should have relied.[2]  Plaintiff also contends that the ALJ failed to explain the significance of Plaintiff's May 2020 x-rays showing "no significant spinal stenosis or nerve root impingement." (ECF No. 17 at 16.) However, as the ALJ noted, Plaintiff's December 2019 cervical spinal surgery had a "post-operative diagnosis of a C6–C7 degenerative disc herniation with cervical spinal canal stenosis," and Plaintiff's February 2020 lumbar spinal surgery had a "post-operative diagnosis of L4–L5 and L5–S1 lateral recess neural foraminal stenosis

---

[2]    The Court notes that the record contains an October 2020 x-ray of Plaintiff's sacrum/coccyx, which was taken to determine if there was a fracture. (AR 734.) The results revealed no fracture or abnormal finding but similarly noted "degenerative disease at the visualized portion of the lower lumbar spine at L4–4 and L5-S1." (AR 734, 838.) Plaintiff also had an MRI of the thoracic spine on April 29, 2022, just prior to permanent implantation of the spinal cord stimulator. (AR 814.) The full report is not in the record, but the treatment notes state that the concluding impression was "[u]nremarkable thoracic spine MRI without contrast." (AR 814.)

24-cv-00850-JLB

resulting in bilateral lower extremity radiculopathy." (AR 23 (citing Ex. 4F/37–38, 41, 67).) As Plaintiff's May 2020 x-rays did not show any significant spinal stenosis or nerve root impingement, the ALJ reasonably concluded that these conditions were resolved with surgical intervention. (*See* AR 393–94.) In reaching his conclusions, an ALJ "is entitled to draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Plaintiff further argues that it was improper to rely on her 2020 x-rays because subsequent treatment notes indicate that Plaintiff continued to complain of severe pain post-surgeries. (ECF No. 17 at 16–17.) However, Plaintiff does not point to any objective evidence in the record that the ALJ did not take into consideration that undermines the ALJ's conclusion that the objective record as a whole is inconsistent with the severity of Plaintiff's subjective symptom testimony. Although Plaintiff disagrees with how the ALJ weighed and considered the totality of the objective medical evidence, the ALJ did not engage in prohibited cherry picking. Accordingly, the Court finds that this basis was a clear and convincing reason supported by substantial evidence for rejecting the severity of Plaintiff's subjective symptom testimony.

### b. *Improvement with Pain Management Treatment*

In addition, the ALJ discounted Plaintiff's testimony regarding the severity of her symptoms on the basis that her statements were inconsistent with the longitudinal treatment record. (AR 23.) Specifically, the ALJ noted that "there was evidence of continued improvement with pain management treatment throughout her longitudinal treatment record, including significant improvement after use of a lumbar spinal cord stimulator." (AR 23 (citing Ex. 5F/6–10, 37–40, 53–56, 13F/19–22, 23–26, 27–30, 31–35, 45–48, 53–56, 61–64, 74–77, 78–81, 82–85, 14F/1–3).) In assessing a claimant's subjective symptoms, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [] benefits." *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(3) (a claimant's improvement with treatment is "an important indicator of the intensity and

persistence of . . . symptoms"); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (stating that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability").

In his decision, the ALJ noted that Plaintiff received "pain management treatment for associated symptoms of neck pain and lower back pain that radiated down her upper and lower extremities with no paresthesia except for intermittent tingling in her bilateral hands." (AR 23 (citing Ex. 5F/6–10, 37–40, 53–56, 13F/19–22, 23–26, 27–30, 31–35, 45–48, 53–56, 61–64, 74–77, 78–81, 82–85).)    The ALJ further noted that "Plaintiff was treated primarily with medication management with evidence of noted improvement, as she continually reported that medication helped to reduce her overall pain symptoms and allowed her to be able to function." (AR 23.)    The ALJ acknowledged that the few spinal injections Plaintiff received "provided only temporary relief from her pain symptoms," but Plaintiff's more recent pain management treatment consisting of a lumbar spinal cord stimulator trial implantation appeared to "significantly alleviate" her ongoing pain symptoms, as she reported "90 to 100% pain relief." (AR 23.)    The ALJ added that Plaintiff thereafter had a permanent lumbar spinal cord stimulator implanted. (AR 23 (citing Ex. 13F/82–85, 14F/1–3).)

Plaintiff argues that the ALJ erred by materially mischaracterizing the evidence regarding Plaintiff's improvement on pain management treatment. (ECF No. 17 at 15–16.) Plaintiff contends that the evidence dated both before and after the lumbar spinal cord stimulator trial implantation demonstrates multiple continued reports of severe pain, poor pain management, and continued use of narcotic pain medication. (*Id.*)

Plaintiff's treatment record indicates that in 2022, prior to the stimulator trial implantation, she experienced constant, sharp, and shooting low back pain radiating to her hips and sacral region that she rated at an 8 to 9 out of 10, and constant, sharp, throbbing and aching neck pain radiating to her shoulders that she rated at a 7 to 9 out of 10. (AR 801–51; *e.g.* 801, 809, 813, 835, 847, 860.)    Plaintiff saw her pain management doctor monthly and managed her pain with prescribed Norco, Gabapentin, and Voltaren Gel. (AR

56, 801–51.)  Plaintiff denied any side effects to these medications.  (AR 801–51.)  The treatment notes state that Plaintiff's medications helped to decrease her overall pain to more tolerable levels and allowed her to be able to function and continue to perform her activities of daily living including being able to work full time.  (AR 801–51; *e.g.* 802, 810, 814, 836, 848, 860.)

On December 1, 2022, Plaintiff had the trial lumbar spinal cord stimulator implanted.  (AR 848–51.)  On December 9, 2022, Plaintiff returned for her first follow up and removal.  (AR 852–55.)  Plaintiff reported that for "the first few days there was virtually no pain on the given settings."  (AR 852.)  However, she had numbness in her bilateral lower extremities on "new settings" the last two days.  (AR 852, 854.)  Based on these results, Plaintiff stated that she would like to move forward with implantation of a permanent lumbar spinal cord stimulator.  (AR 852.)  During the appointment, Plaintiff's trial stimulator leads were removed.  (AR 853–54.)

At her next appointment on January 25, 2023, Plaintiff represented that she had been "stable since her last office visit" and still desired implantation of the permanent spinal cord stimulator.  (AR 856.)  Plaintiff's treatment notes at this visit indicate that she received "90–100% pain relief" with the trial.  (AR 858.)  On March 24, 2023, Plaintiff represented that she was having difficulty managing her pain symptoms with her medications and that her Norco had not been effective since her last visit on February 17, 2023.  (AR 864.)  On May 1, 2023, Plaintiff had the permanent spinal cord stimulator implanted.  (AR 868–70.)  Plaintiff provided the Operative Note detailing the surgery (*id.*), but no follow up treatment notes or any medical records at all after the date of the surgery.

Plaintiff's treatment notes therefore reflect that even prior to permanent implantation of the spinal cord stimulator, and up until just before its implantation, Plaintiff's medicinal pain management was consistent.  In May 2021, Plaintiff was treating her pain with 7.5/325 mg of Norco, 300 mg of Gabapentin for neuropathic pain, and Voltaren Gel for additional topical pain relief.  (AR 784.)  As of February 2023, Plaintiff was still treating her pain with the same medications in the same dosages.  (AR 860–62.)  Only in March 2023, just

before permanent implantation of the permanent spinal cord stimulator, did Plaintiff switch her Norco to Percocet 5/325 mg "due to ineffectiveness and possibility of tolerance." (AR 866.)

Given the foregoing, the Court finds that the ALJ's determination that there was evidence of continued improvement with pain management treatment throughout Plaintiff's longitudinal treatment record, including significant improvement after use of a lumbar spinal cord stimulator, was reasonable and supported by substantial evidence. As the ALJ noted and as reflected in her treatment notes, Plaintiff continually reported that despite ongoing pain, her medications decreased her overall pain to more tolerable levels and allowed her to be able to function. (AR 23.) Plaintiff also largely maintained the same pain medication regimen over time, up until right before permanent implantation of the spinal cord stimulator, suggesting effectiveness.

Plaintiff argues that the ALJ erred in finding significant improvement with the trial spinal cord stimulator because the trial only provided two days of temporary pain relief. (ECF No. 17 at 15.) However, the trial lasted only a few days, and Plaintiff showed remarkable improvement on the initial settings such that she desired permanent implantation. The surgery was uneventful, Plaintiff was discharged after post-surgical monitoring, and there were no immediate post-procedure complications noted. (AR 869–70.) There are no records indicating that Plaintiff suffered significant pain after permanent implantation of the spinal cord stimulator.[3] Given the significant relief Plaintiff gained from the trial implantation, the ALJ permissibly inferred that the permanent implantation was also beneficial. *See Sample*, 694 F.2d at 642 ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence."). Although Plaintiff argues that the ALJ's finding that permanent implantation on May 1, 2023, was successful is "pure speculation," Plaintiff did not provide any follow up treatment notes for the ALJ

---

[3] As addressed above, Plaintiff provided no records whatsoever after the actual surgery, although the ALJ held the record open, and Plaintiff had the opportunity to do so.

1  to review.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009)

2  ("To establish eligibility for Social Security disability benefits, a claimant has the burden

3  to prove he is disabled[,]" and he bears the burden of proof at steps one through four in the

4  five-step procedure for determining disability).  The ALJ kept the record open after the

5  March 28, 2023 hearing and received and accepted the treatment notes Plaintiff thereafter

6  provided.  Notably, although Plaintiff submitted additional records as late as May 30, 2023

7  (AR 17), those records did *not* include any records of treatment or follow-up after the

8  May 1, 2023, implant surgery.  Thus, no evidence of ongoing pain after permanent

9  implantation was submitted.  Given the foregoing, the Court finds that this was a clear and

10 convincing reason supported by substantial evidence for rejecting the severity of Plaintiff's

11 subjective symptom testimony.

12     The Court finds that the ALJ did not err in rejecting the severity of Plaintiff's

13 subjective symptom testimony.

14     **B.    The RFC is Supported by Substantial Evidence in the Record.**

15          1.   Parties' Arguments

16     Plaintiff argues that the RFC is not supported by substantial evidence in the record.

17 (ECF No. 17 at 5–13.)  Specifically, Plaintiff argues that the ALJ erred in determining

18 Plaintiff's RFC "by 'playing doctor,' taking it upon himself, to use his lay knowledge [to]

19 interpret raw esoteric neurological findings and [by] 'materially mischaracterizing' the

20 evidence of record[.]"  (*Id.* at 5.)  Plaintiff contends that "there was no RFC opinion of

21 record from any treating, examining or reviewing medical source" who had reviewed the

22 entire medical record, and the ALJ improperly substituted his lay opinion.  (*Id.* at 5–6.)

23 Plaintiff further contends that the ALJ mischaracterized the record in finding that Plaintiff

24 experienced "significant improvement" after implantation of a trial spinal cord stimulator.

25 (*Id.* at 6–10.)  Lastly, Plaintiff argues that the ALJ violated his duty to develop the record

26 by failing to send Plaintiff to a consultative examiner or by contacting her treating

27 physician to determine the extent of her improvement after her permanent spinal cord

28 stimulator implantation surgery.  (*Id.* at 11–13.)

In response, the Commissioner argues that the ALJ's RFC assessment is supported by substantial evidence in the record, noting that the RFC was even more restrictive than the unchallenged prior administrative medical findings. (ECF No. 15 at 13–14.)  The Commissioner further argues that the ALJ appropriately translated and incorporated the medical records and clinical findings into a concise RFC. (*Id.* at 13.)  With respect to the ALJ's duty to develop the record, the Commissioner argues that Plaintiff forfeited this argument when she did not raise the issue at the administrative hearing. (*Id.* at 11–12, 14.)  Even if Plaintiff did not forfeit the argument, the Commissioner argues that she has not shown that the record was so ambiguous as to necessitate further development. (*Id.* at 11–12.)

### 2.    Legal Standards

The RFC is "the most [a plaintiff] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In formulating the RFC, the ALJ must weigh "all the relevant evidence," including medical records, medical and other source opinions, and the claimant's symptom testimony.  *Id.* at § 404.1545(a)(1)–(3)); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.") (citation omitted).  The RFC must be supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  The court must defer to the ALJ's RFC determination "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence."  *Id.*

An ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citation omitted).  The ALJ must consider all relevant records in its analysis because the RFC must be "based on *all* the relevant evidence in [the claimant's] case record."  20 C.F.R. § 404.1545 (emphasis added).  However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276

F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

When the duty to develop the record is triggered, an ALJ may discharge the duty in several ways, including subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998)). As some courts have persuasively observed, "[t]he ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (citations omitted). Further, it is Plaintiff's burden to "furnish medical and other evidence that [the ALJ] can use to reach conclusions about [the claimant's] medical impairments(s)." *Mayes*, 276 F.3d at 459 (quoting 20 C.F.R. § 404.1512(a)).

"[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Courts "will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice[.]" *Id.*; *see also Obrien v. Bisignano*, 142 F.4th 687, 701 (9th Cir. 2025) (finding that the *Meanel* rule remains intact "to the extent [it holds] that claimants generally may not present new evidence [in federal court], and new issues dependent on that evidence, that they failed to present to the ALJ"); *Simpson v. Berryhill*, 717 F. App'x 670, 673 (9th Cir. 2017) (distinguishing *Meanel* and finding the district court erred in finding waiver where the alleged error did not become apparent until after the hearing when the ALJ issued her decision).

///
///
///
///
///

1           3.   <u>Analysis</u>

2         Plaintiff argues that the ALJ's RFC—which limits Plaintiff to sedentary work[4]—

3    improperly failed to consider "any treating, examining or reviewing medical source who

4    had reviewed all the relevant evidence of record in order to make a functional capacity

5    claim." (ECF No. 17 at 5 (emphasis removed).)  The ALJ considered and found "generally

6    persuasive" the medical opinions of the State Agency medical consultants who opined that

7    Plaintiff could work at a light exertional level and occasionally perform postural maneuvers

8    but should avoid concentrated exposure to extreme cold, vibrations, and hazards.  (AR 24.)

9    However, the ALJ limited Plaintiff to a sedentary exertional level "to account for some

10   neurological deficits in her lower extremities and ongoing symptoms of lower back pain

11   radiating into her lower extremities."  (AR 24.)

12        At the hearing, the ALJ received into evidence medical records identified as 1F

13   through 9F, which included Plaintiff's medical records through approximately the end of

14   2021, including records from Sharp Grossmont Hospital, Plaintiff's treating physician Hoe

15   Huy Le, M.D., Pain Care of San Diego, Orthopedic Specialists of San Diego, and

16   Psychiatric Centers at San Diego.  (AR 28–29, 40.)  These were the same records reviewed

17   by the State Agency medical consultants.  (AR 67–85, 87–103.)  Additional medical

18   records were submitted after the hearing, including records from Psychiatric Centers at San

19   Diego (Ex. 10F dated 1/3/2022—8/16/2022), Sharp Rehabilitation Services (Ex. 11F dated

20   2/13/20–5/29/20), Huy Hoe MD (Ex. 12F dated 3/10/2023), and Pain Care of San Diego

21   (Ex. 13F dated 11/18/2021–3/24/2023 and Ex. 14F dated 5/1/2023).  (AR 29.)

22

23   ───────────────

24   [4]     "Sedentary work involves lifting no more than 10 pounds at a time and occasionally

25   lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary
     job is defined as one which involves sitting, a certain amount of walking and standing is

26   often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are

27   required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).  Here,
     Plaintiff was limited to standing and/or walking for two hours in an eight-hour workday.

28   (AR 22.)

The review by the State Agency medical consultants therefore included Plaintiff's records through November 2021, including Plaintiff's x-rays from May 2020.  As of November 18, 2021, the date of the final Pain Care pain management record reviewed by the State Agency medical consultants, Plaintiff reported experiencing "increased low back pain" which she rated to be an 8/10 and described as a "constant, sharp and shooting" pain that radiates to her bilateral hips and to her sacral region.  (AR 481.)  Plaintiff also reported experiencing "constant neck pain" which rated to be a 7–8/10 on average and intermittent numbness in both hands.  (AR 481.)  She described her neck pain as "sharp, throbbing and aching" and radiating to her bilateral shoulders.  (AR 481.)  Plaintiff reported that her December 2019 cervical fusion surgery and 2020 lumbar laminectomy surgery "did not help much for pain."  (AR 481.)  Plaintiff had completed physical therapy with minimal relief, and was managing her pain with Norco 7.5/325 mg, Gabapentin 300 mg for neuropathic pain, and Voltaren Gel for additional topical pain relief.  (AR 482.) Examinations showed tenderness and limited range of motion in her spine.  (AR 482.)

Although it is correct that the ALJ considered records beyond those that were available to the State Agency medical consultants at the time they rendered their opinions, that does not mean it was improper for the ALJ to consider those opinions.  Plaintiff has not established that her medical records after November 2021 evidenced a materially different medical picture than her medical records before November 2021.  Moreover, in considering all of the medical records, including those after November 2021, the ALJ found a more limited RFC was appropriate to "account for some neurological deficits in her lower extremities and ongoing symptoms of lower back pain radiating into her lower extremities."  (AR 25.)

Plaintiff argues that the ALJ erred when he "took it upon himself to review numerous, esoteric neurological records" from January 2022 through May 2023 when he should have sent Plaintiff to a consultative examiner or contacted her treating physician. (ECF No. 17 at 5, 11.)  However, Plaintiff does not identify any worsening of Plaintiff's condition in that time, any significant change in treatment, or any additional imaging that

24-cv-00850-JLB

was not considered by the State Agency medical consultants that would have changed the outcome. "The mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record." *Stivers v. Saul*, No. 1:19-CV-01110-BAM, 2021 WL 1193794, at *8 (E.D. Cal. Mar. 30, 2021). Here, the ALJ was entitled to rely on the opinions of the State Agency medical consultants as their opinions were supported by the medical record as a whole and consistent with it.[5] *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (noting that "reports of the nonexamining advisor . . . may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); *Charney v. Colvin*, No. CV 13-7080 JC, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014) (finding that the ALJ did not err in relying on the opinions of state agency physicians that did not account for subsequent medical records where subsequent records were considered by the ALJ and were not inconsistent with RFC), *aff'd*, 647 F. App'x 762 (9th Cir. 2016).

Moreover, the ALJ "limited Plaintiff to a sedentary exertional level to account for some neurological deficits in her lower extremities and ongoing symptoms of lower back pain radiating into her lower extremities." (AR 24.) Therefore, the ALJ assessed Plaintiff with a more restrictive RFC than that assessed by the medical experts. In Social Security cases, courts presume that "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). As such, ALJs bear the responsibility of "translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006. An RFC finding need not directly correspond to a specific medical opinion. *Cuevas v. O'Malley*, No. 2:23-CV-01786 AC, 2024 WL 1406739, at *4 (E.D. Cal. Apr. 2, 2024) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)). The ALJ may incorporate the opinions

---

[5]    The Court notes that Plaintiff did not argue that the ALJ erred in assessing the opinions of the State Agency medical consultants.

of a physician by assessing RFC limitations entirely consistent with, but not identical to, limitations assessed by the physician. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010). The ALJ did so here.

Plaintiff further argues that the ALJ should have developed the record further by sending Plaintiff out for a consultative examination or contacting her treating physician to determine the extent of any improvement in Plaintiff's pain and limitation after her permanent spinal cord stimulator implantation surgery. (ECF No. 17 at 11.) However, to the extent the ALJ's duty to develop the record further was triggered, an ALJ can discharge that duty by "keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150. Here, the ALJ left the record open after the hearing and continued to receive records after implantation of the permanent spinal cord stimulator through May 30, 2023. (AR 17.) Plaintiff, who bears the burden to prove she is disabled, did not submit any records after her surgery despite having the opportunity to do so. *See Bayliss*, 427 F.3d at 1217; 42 U.S.C. § 423(d)(5)(A). The Court finds that the ALJ met his duty here.

Given the foregoing, the Court finds that the ALJ did not err in assessing Plaintiff's RFC.

## VI.    CONCLUSION

For the reasons discussed above, Plaintiff's merits brief is **DENIED**, and the decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Dated:  September 22, 2025

Hon. Jill L. Burkhardt
United States Magistrate Judge